## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| KEESHA BLEVINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SCOTT COUNTY, TENNESSEE, AMY | § | Docket No.: |
| NICELY, BRITTNEY BROWN, CINDY | § | |
| BERTRAM, ERIAN WASHAM and | § | JURY DEMAND |
| unknown John and Jane Doe jail officers, | § | |
| | § | |
| and | § | |
| | § | |
| ADVANCED CORRECTIONAL | § | |
| HEALTHCARE ("ACH"), EDWARD W. | § | |
| CAPPARRELLI, M.D. and John and Jane | § | |
| Doe medical personnel, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Comes the Plaintiff, and for cause of action against the Defendants herein would show as follows:

## I. PARTIES

1. Plaintiff Keesha Blevins is a resident of Scott County, Tennessee.

2. Defendant Scott County, Tennessee is a governmental entity created and existing in the State of Tennessee and can be served through its County attorney, John Beaty, 447 Howard H. Baker, Hwy, #3, Huntsville, TN 37756.

1

3. Defendant Advanced Correctional Healthcare is an Illinois corporation licensed to do business in Tennessee and can be served through its registered agent for service of process, C T Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929-9710 with its principal place of business at 3922 Barring Trace, Peoria, IL 61615-2500.

4. Upon information and belief, Amy Nicely, Brittney Brown, Erian Washam and Cindy Bertram were employed as jail guards/correction officers by Scott County at all times relevant to this action and violated Plaintiff's civil and constitutional rights as set forth hereinbelow. At all times hereto, these Defendants were acting under color of state law and are subject to this action pursuant to 42 U.S.C. § 1983.

5. Upon information and belief, Defendant, Edward W. Capparrelli, M.D. was servicing the jail as an employee of Advanced Correctional Healthcare, an independent medical provider for Scott County jail at all times relevant to this action and he violated Plaintiff Keesha Blevins' civil and constitutional rights as set forth hereinbelow. At all times hereto this defendant was acting under color of state law and is subject to this action pursuant to 42 U.S.C. § 1983.

## II. STATEMENT OF JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiffs' claims brought under Title 42 of the United States Code, section 1983. See 28 U.S.C. §§1331, 1343(a)(3).

7. Venue exists in the United States District Court, Eastern District of Tennessee at Knoxville, pursuant to 28 U.S.C § 1391 (b)(1) and/or (2).

2

8.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

### III. STATEMENT OF FACTS

9.     On or about April 30, 2017, Plaintiff Keesha Blevins was arrested and taken into custody and transported to the Scott County Jail. Blevins was not restricted of her liberty in the Scott County Jail by way of a conviction for any criminal offense. Rather, during the entirety of the events complained of herein, she was a pre-trial detainee who was simply unable to post sufficient bail to be released on bond pending further court proceedings.

10.     Approximately fifteen years prior, Plaintiff Keesha Blevins suffered a grand mal seizure, and thereafter, her physician discovered three, inoperable cysts on her brain. As a result, her physician prescribed anti-seizure medications to prevent any further seizures from occurring.

11.     Thereafter, Plaintiff Keesha Blevins took her anti-seizure medications on a daily basis and never suffered another seizure until the events complained of herein occurred.

12.     Upon information and belief, when Plaintiff Keesha Blevins was brought into the Scott County Jail facility, she was given a medical intake. During the booking and medical intake process, Defendants Amy Nicely, Cindy Bertram and Erian Washam were present.

13.     During that time, she provided her prescription medication list, which included, inter alia, Gabapentin (Neurontin) and Carbamazepine (Tegretol) -- anti-

3

seizure/anti-convulsant medications, Trazadone and Celexa – anti-depressant medications; Metformin -- sugar control medication; Levoxyl (Levothryoxine) -- hypothyroidism medication; Imitrex (Sumatriptan) -- headache medication; Promethazine, an allergy medication; Phyoracet and Suboxone -- opiate withdrawal medications; Vitamins for Anemia and Spironalactone -- a diuretic.

14. Upon information and belief, all of the individual Defendants named herein were aware of the medication list provided by Plaintiff Keesha Blevins, including the anti-convulsant medications.

15. Carbamazepine is an anti-convulsant used primarily for the treatment of epilepsy; it also has clinical applications for use in patients with neuropathic pain and bipolar disorder. Carbamazepine has a generalized suppressive effect on brain wave activity thereby preventing certain types of seizures. It is extremely important that this medication be given on a regular schedule as prescribed by a physician in order to maintain a therapeutic steady-state blood level for patients with epilepsy in order to prevent break-through seizures. Abrupt discontinuation of this medication also poses an increased risk for seizures, especially in vulnerable patients such as Ms. Blevins.

16. Gabapentin is an anti-convulsant that stabilizes electrical activity in the brain by reducing the release of the "excitatory" neurotransmitter glutamate. Gabapentin is also used to treat peripheral neuropathy, in particular neuropathic pain. Trazodone is a tetracyclic antidepressant typically used to treat depression, anxiety disorders, and/or insomnia. It affects the neurotransmitter serotonin.

4

Citalopram is a different type of antidepressant that also affects serotonin levels in the brain. The irregular dosing of any of these medications can lead to electrical instability in the brain and predispose to seizures, especially in patients with underlying epilepsy.

17. In summary, Plaintiff Keesha Blevins was taking four different medications that affected the function of her brain. The abrupt alteration in dosing schedule and/or abrupt discontinuation of all four of them simultaneously led to an acute alteration in neurotransmitter levels, increased electrical activity in her brain, and significantly increased her vulnerability to catastrophic, life-threatening seizures.

18. During the intake process, Plaintiff Keesha Blevins also explained she had suffered seizures in the past and further explained that she needed to be provided her anti-convulsant medications which she had been taking for the past fifteen years in order to prevent having any seizures which could result in permanent brain injury. Upon information and belief, all of the individual Defendants named herein were aware of Plaintiff Keesha Blevins' medical history of seizures.

19. Upon information and belief, certain state-established standards of medical care for jail facilities required that upon learning of Blevins' history of seizures and her anti-convulsant, medically-necessary medications, Nicely, Bertram and Washam, or one of their superior officers, was required to contact the facility doctor or other "health authority" and report to said person that Blevins had presented with this condition and medication list upon intake. Upon information

5

and belief, Nicely, Bertram and Washam and/or others who had knowledge failed to so inform the facility doctor or "health authority."

20.    In the alternative, Nicely, Bertram and/or Washam, or one of their superior officers, did so inform the facility doctor or health authority that Blevins had presented with this condition and medication list upon intake.

21.    In any and all events, after the intake procedure, the Jail, its officers and officials as well as all medical personnel, including the individual Defendants named herein and the "health authority," failed to provide Ms. Blevins any of the anti-convulsant medications that she informed them during intake were medically necessary to prevent a seizure. They also failed to provide her any of the other medications affecting her brain activity.

22.    At some point during her detention, Plaintiff Keesha Blevins began having seizures, which, upon information and belief, were directly caused by the willful failure of all of the Defendants named herein to provide Plaintiff her prescription medications.

23.    All of the individual named Defendants herein had actual knowledge that Plaintiff Keesha Blevins was experiencing seizures but none of them undertook to provide her adequate medical care for a serious medical need. Instead, these Defendants, and other John and Jane Doe Defendants, consciously disregarded the risk posed to Blevins by the seizures and did not endeavor to get her medical care for her emergent medical need.

6

24.     During this period, Plaintiff Keesha Blevins filled out a computerized medical request form wherein she requested she be provided all her medically necessary prescription medications.   Upon information and belief, all of the individual Defendants named herein were aware of this request.

25.     Despite her request, the Jail, its officers and officials as well as all medical personnel, including the individual Defendants named herein, continued to fail to provide her any of the anti-convulsant medications.   They also continued to fail to provide her any of the other medications affecting her brain activity.

26.     On May 6, 2017, and based on her continuing seizures, Plaintiff Keesha Blevins was moved to an isolation cell in the booking area of the Jail facility. Upon information and belief, Defendant Brittney Brown was the officer who caused Plaintiff to be moved into the cell in the booking area.

27.     While Plaintiff was in that location and upon information and belief, certain jail personnel or medical personnel contacted Defendant Dr. Capparelli and informed him of the medical emergent event of Blevins' continuing seizures. Defendant Capparelli instructed the nurse on duty, whose name is currently unknown because the nurse's handwriting and signature in the medical records provided to Plaintiff are not legible, and Defendant Brown to have Blevins' family bring her anti-convulsant medications to the Jail whereupon he instructed said nurse and Defendant Brown to then provide them to her.   Defendant Capparelli did not instruct anyone to immediately send Plaintiff to the hospital or to send her to the hospital if the officers/jailers/nurses could not obtain the medications from

7

Plaintiff's family. Further, Defendant Capparelli did not endeavor to provide Plaintiff any medical care whatsoever despite having actual knowledge of her emergent medical condition, and upon information and belief, after issuing his instructions, he simply hung up the phone.

28. The officers/jailers/nurses failed to obtain the anti-convulsant medications from Plaintiff Blevins' family members. Defendant Dr. Capparelli also failed to obtain the anti-convulsant medications from the family members or otherwise endeavor to obtain them.

29. Eventually, the Jail, its officers and officials and/or the medical personnel decided to transport Plaintiff to the hospital but they failed to call an ambulance to do so. Plaintiff, who, after suffering numerous seizures, was too physically infirm to walk, was carried to an area of the Jail to await transport to the hospital. Again, no ambulance was called. Upon information and belief, Defendant Brown either directed or was aware of all allegations set forth in this paragraph.

30. After several hours and multiple telephone calls to off-duty officers by Defendant Brown, Officer Cindy Bertram agreed to come in and take Plaintiff Keesha Blevins to the hospital in her squad car.

31. Upon information and belief, many hours elapsed between the time Defendant Dr. Capparrelli instructed Defendant Brown and the unknown nurse to attempt to obtain the anti-convlusant medications from Plaintiff's family and the time Plaintiff was eventually driven to the hospital by Defendant Bertram. During this entire period, Plaintiff was experiencing a medical emergent event and was

8

afforded no medical care whatsoever by these Defendants, let alone adequate medical care.

32. Plaintiff Keesha Blevins was admitted later in the day of May 6, 2017, to Lafollette Medical Center in Lafollette, Tennessee. She was thereafter discharged that same day and returned to the Jail with several prescriptions.

33. On May 9, 2017, Plaintiff Keesha Blevins filled out another computerized medical request form for medical assistance, stating, "[S]till have not seen nurse over seizures and meds. Still don't feel good and still not getting proper meds or treatment considering I'm major medical."

34. On May 10, 2017, Plaintiff Keesha Blevins was finally seen by a nurse in the Jail and was given 1000mg of Tylenol and told to "follow-up as needed" and to "hydrate, rest as you can, no naps during the day and exercise."

35. After her return from the hospital, Plaintiff Keesha Blevins was given one or perhaps two of the medications affecting her brain activity but the Jail, its officers and officials and its medical personnel still steadfastly refused to provide her the anti-convulsant medications and other medications affecting her brain activity in the dosages as prescribed by her physicians. As a result, she continued to experience numerous seizures, until the Jail ultimately released her from custody on May 10, 2017.

36. All of the individual Defendants named herein had actual knowledge that Plaintiff Blevins was suffering physical manifestations consistent with a seizure but they disregarded any risks posed by these medical emergent events and failed to

9

transport her immediately to the hospital while she was experiencing seizures except for the one time as noted herein on May 6, 2017.

37. In addition, all of the individual Defendants had actual knowledge that Plaintiff Blevins had a history of seizures and arrived at the jail on a prescription of anti-seizure medications; yet, they did not endeavor to ensure Blevins was provided these medically-necessary medications and in so doing disregarded the risk to Blevins that not providing the medications entailed: potential seizures and permanent brain injury.

38. Any layperson having knowledge that Plaintiff was experiencing a seizure would have instantly recognized that Plaintiff was having a medical emergent event and would have immediately sought to provide Plaintiff medical care by transporting her to a hospital or otherwise have sought to provide her some form of emergency medical care.

39. Any layperson having knowledge upon intake that Plaintiff had a history of seizures and was taking anti-convulsant medications to prevent further seizures would have understood that in the absence of Plaintiff getting those medications, she was at risk of suffering seizures.

40. As a direct and proximate result of the actions of Defendants complained of herein, Plaintiff Keesha Blevins suffered a severe and permanent brain injury.

## IV.    CAUSES OF ACTION

### A.    42 U.S.C. §1983 (FAILURE TO PROVIDE ADEQUATE MEDICAL CARE FOR A SERIOUS MEDICAL NEED TO BLEVINS, A PRE-TRIAL DETAINEE)

#### 1.    Individual liability

41.    Plaintiffs hereby incorporate the preceding paragraphs of this complaint as if fully set forth herein.

42.    Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws.  In this case, all of the individual defendants as well as the John and Jane Doe defendants were acting under color of state law.

43.    The Fourteenth Amendment to the United States Constitution requires that a pretrial detainee be provided adequate medical care while in the custody of any governmental entity.

44.    The constitutional rights afforded to prisoners who have been duly convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to pre-trial detainees – who have not yet been punished as a result of a conviction – under the Due Process Clause of the Fourteenth Amendment. This Court should analyze a claim of deliberate indifference to the medical needs of a pre-trial detainee at least the same as an identical claim of a prisoner brought pursuant to the Eighth Amendment if not with additional

11

constitutional requirements and protections as a pre-trial detainee has yet to be convicted of any offense and she is therefore possessed of all her constitutional rights not necessarily afforded to convicted persons, including her right to the presumption of innocence secured by the Fourteenth Amendment's Due Process Clause's liberty prong.

45.     An individual officer engages in conduct in violation of the Due Process Clause of the Fourteenth Amendment where he or she demonstrates deliberate indifference to the serious needs of a pre-trial detainee such as Keesha Blevins by intentionally **denying** or **delaying** adequate medical care for said person. Deliberate indifference may be found to exist where an officer denies or delays obtaining treatment for a pre-trial detainee under facts and circumstances that would cause a layperson to conclude medical treatment was needed.

46.     Upon information and belief, on April 30, 2017, the individual defendants possessed actual knowledge that Keesha Blevins was on prescribed medications for serious medical needs, such as gabapentin and carbamazepine, the drugs she informed the intake officers she took multiple times per day as anti-seizure medications which she had been taking since her serious grand mal seizure some fifteen years earlier.  Further, Blevins told Defendants Nicely, Bertram, and Washam on intake that she needed to take her anti-seizure medications so that she would not experience any seizures while in jail.  Additionally, and continuing upon information and belief, prior to experiencing the first seizure Plaintiff Blevins complained to all of

Case 3:17-cv-00348-TRM-DCP   Document 1   Filed 08/10/17   Page 12 of 26   PageID #: 12

these individual defendants and perhaps others that she needed to be provided her medications, including her anti-seizure medications.

47.     Upon information and belief, Keesha Blevins had at all times prior to her first seizure in the jail informed these defendants that their failure to provide her the prescribed medications could result in her experiencing a significant seizure.

48.     Upon information and belief, when Keesha Blevins began experiencing significant seizures, these defendants failed to provide her any medical care whatsoever.

49.     Upon information and belief, all of these defendants had actual knowledge of the physical signs and symptoms being exhibited by Keesha Blevins as a result of these seizures.

50.     Upon information and belief, these defendants had actual knowledge of but disregarded the serious risk of injury to Keesha Blevins by failing to provide her medical care for a serious medical need, until they eventually decided to call the facility doctor, who instructed them to attempt to obtain the anti-seizure medications from Plaintiff's family members.

51.     Defendant Caparelli had actual knowledge that Plaintiff Keesha Blevins was experiencing seizures but he disregarded the significant risk the seizures posed to her and failed to afford her any medical care whatsoever, instead instructing Defendant Brown and the unknown nurse to attempt to obtain Blevins' medications from her family.

52.     Upon information and belief, these defendants intentionally withheld vital information from the hospital personnel after sending Plaintiff Keesha Blevins to the hospital that she arrived at the jail on prescribed medications of gabapentin and carbamazepine and that the jail and these defendants had failed to provide her these medications the entire time she was detained.

53.     These defendants had actual knowledge that Plaintiff Keesha Blevins was exhibiting physical manifestations consistent with the medical emergency of a seizure. These Defendants nevertheless disregarded the risk to her health that they perceived and refused to afford her any medical care whatsoever, let alone adequate medical care. Any reasonable layperson observer would have instantly recognized that Plaintiff was in medical distress and would have taken action to afford Plaintiff medical care.

54.     Based on the foregoing, these defendants and certain potential John and Jane Doe Defendants exhibited deliberate indifference to Keesha Blevins serious need for adequate medical care which directly caused her injuries as described herein, and they are therefore liable to her pursuant to the provisions of 42 U.S.C § 1983.

55.     In addition, the jail officer Defendants exhibited deliberate indifference when they learned of her condition on intake and failed to immediately report it to the facility doctor or "health authority." If they did report it, then the facility doctor or "health authority" exhibited deliberate indifference in not ensuring Blevins was provided her anti-convulsant medications.

56. Plaintiff therefore sues these defendants and the John and Jane Doe defendants for their deliberate indifference to and violation of Keesha Blevins right to be provided adequate medical care for a serious medical need. Plaintiff seeks the following relief:

    a. For medical expenses (past, present and future);

    b. lost wages;

    c. loss of earning capacity;

    d. pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

    e. For any and all other damages allowable under state or federal law;

    f. Attorney's fees pursuant to 42 U.S.C. § 1988;

    g. Costs of this action;

    h. Discretionary costs.

## 2. Municipal liability

### i. Scott County, Tennessee

57. Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

58. The United States Constitution requires that a pretrial detainee be provided adequate medical care while in the custody of any governmental entity.

59. The constitutional rights afforded to prisoners who have been duly convicted of any criminal offense under the Eighth Amendment's Cruel and Unusual Punishment Clause extend to pre-trial detainees – who have not yet been punished

15

as a result of a conviction – under the Due Process Clause of the Fourteenth Amendment. This Court should analyze a claim of deliberate indifference to the medical needs of a pre-trial detainee at least the same as an identical claim of a prisoner brought pursuant to the Eighth Amendment if not with additional constitutional requirements and protections as a pre-trial detainee has yet to be convicted of any offense and she is therefore possessed of all her constitutional rights not necessarily afforded to convicted persons, including her rights to the presumption of innocence secured by the Fourteenth Amendment's Due Process Clause's liberty prong.

60.    A governmental entity may be held liable based upon its officers' deliberate indifference to and violation of any citizen's constitutional rights where a custom, policy, or procedure of the municipality is found to be the proximate cause of the constitutional violation.

61.    Additionally, a governmental entity may be held liable where its supervisory officials and officers ratify an illegal action of lower-tier officers or employees or where the officials and officers at the executive level take actions that themselves constitute deliberate indifference of the municipality itself and are the driving force behind the constitutional injury.

62.    Upon information and belief, Scott County has a history of failing to provide adequate medical care to inmates and pretrial detainees housed at the Scott County Jail.    This history constitutes a custom which caused the deliberate indifference constitutional violations of the individual defendants and the John and

Jane Doe defendants. But for this unconstitutional custom, the individual defendants and the John and Jane Doe defendants would not have exhibited deliberate indifference to Keesha Blevins' serious need for adequate medical care but would have provided her the necessary medications and immediately sent her to the hospital or otherwise afforded her adequate medical care once she began experiencing the first seizure.

63.     Indeed, Scott County and some of these same individual Defendants had just been sued prior to the events complained of herein in the United States District Court for the Eastern District of Tennessee in a case of nearly identical facts of the jail failing to afford the Plaintiff in that case adequate medical care for a serious medical need by refusing to provide her similar anti-seizure medications, resulting in her experiencing numerous seizures and by failing to take her to the hospital once she began experiencing seizures. See Brawner v. Scott County, Tennessee et al., No. 3:17-cv-001008 (E.D. Tenn. filed March 24, 2017) (Doc. ## 1, 8) (Compl.; Am. Compl.).

64.     Scott County was also recently sued on allegations of failure to provide adequate medical care to an inmate/detainee who was brought to the Scott County Jail for failure to pay child support. The allegations in that case—all occurring prior to the events giving rise to this case—are that the Plaintiff's decedent had a gash on his foot when brought into the Jail, that the Jail failed to afford the Plaintiff's decedent adequate medical care, and that as a result, he developed an infection and died. See Sexton-Pemberton v. Scott County, Tenn. et al., No. 3:17-cv-00310 (E.D. Tenn. filed July 20, 2017). (Doc. # 1) (Compl.).

17

65.     Prior to or perhaps simultaneous to the events giving rise to the Brawner and Sexton-Pemberton actions, Tennessee state regulators found violations in the Scott County Jail for its failing to comply with certain state-established minimum standards for providing medical care to inmates and/or pre-trial detainees.

66.     These prior incidents, one of which is nearly identical in facts, combined with the incidents giving rise to the State violations and the notice all of these events provided to Scott County constitute a history of failure to provide inmates/detainees adequate medical care for a serious medical need which gives rise to an unconstitutional custom of Scott County which caused the deliberate indifference of the individual Defendants named herein.

67.     Upon information and belief, Scott County through its policies and procedures, has failed to adequately train and supervise its employees, officers and agents (medical personnel or otherwise) to provide detainees and inmates adequate medical care for serious medical needs.   For example, and upon information and belief, but for Scott County's improper policies and procedures, it is hard to fathom how (1) Keesha Blevins was never provided her anti-seizure medications, gabapentin and carbamazepine, which the county, through its officers and medical personnel, knew she was taking based on a prior grand mal seizure, (2) no one in the jail provided her any medical care whatsoever while she experienced numerous seizures, and (3) the evidence of Blevins' medication list and the Jail's failure to provide any of those medications to her was withheld from the hospital when the Jail

18

and its officers and personnel finally decided to send her to the hospital—though not by ambulance—after they failed to obtain the anti-convulsant medications from her family.

68.     In addition, Scott County's medical intake policy allows for medically-necessary prescription medication to be withheld from new jail arrivals and said arrivals are not entitled to any medical screening by any medical personnel for up to 14 days from the date of intake.  Further, Scott County's policy allows medically-necessary prescription medication to be withheld from new arrivals to the jail.

69.     Scott County's policies and procedures as noted herein first and foremost constitute deliberate indifference in and of themselves.  It is truly shocking for Scott County to allow a policy to exist that withholds medically-necessary prescription medications from new jail arrivals which could cause seizures and permanent brain injury to occur to said persons in the absence of the medication. Such a policy is analogous to what one would expect to encounter in jails in third world countries.   The policy in this regard is blatantly unconstitutional and deserving of sanction under 42 U.S.C. sections 1983-1988.

70.     Scott County's policies and procedures also caused the deliberate indifference constitutional violations of the individual defendants and the John and Jane Doe defendants. But for these unconstitutional policies and procedures, the individual defendants and the John and Jane Doe defendants would not have exhibited deliberate indifference to Keesha Blevins' serious need for adequate medical care but would have instead (1) obtained and provided her the medications

19

she was taking, including the gabapentin and carbamazepine, (2) provided her adequate medical care as soon as she began experiencing seizures and (3) told the hospital of the complete medications list that Keesha Blevins presented with on intake to the Jail and the fact that the Jail had willfully refused to provide her any of those medications.

71.     All of Plaintiff Keesha Blevins injuries and damages were proximately caused by the County's unconstitutional customs, policies and procedures.

72.     Based on the foregoing, Plaintiff therefore sues Scott County for its customs, policies and procedures which caused the individual defendants and the John and Jane Doe defendants to exhibit deliberate indifference to and violate her right to be provided adequate medical care for a serious medical need and based on its policy regarding providing medically-necessary prescription medication to new arrivals to the jail which in and of itself constitutes deliberate indifference of Scott County, thereby rendering it liable to Plaintiff. Plaintiff seeks the following relief:

  a.   For medical expenses (past, present and future);

  b.   lost wages;

  c.   loss of earning capacity;

  d.   pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

  e.   loss of consortium;

  f.   For any and all other damages allowable under state or federal law;

  g.   Attorney's fees pursuant to 42 U.S.C. § 1988;

h.  Costs of this action;

i.  Discretionary costs.

### ii.  Advanced Correctional Healthcare

73.  Plaintiff hereby incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

74.  For purposes of Section 1983, ACH acted under color of state law in providing medical care to pre-trial detainees such as Blevins.

75.  Upon information and belief, ACH was the contracted medical provider for providing medical care to pre-trial detainees and inmates in the Scott County Jail at all times relevant hereto.

76.  Upon information and belief, Defendants Capparelli and the unknown nurse were employees of ACH at all relevant times.

77.  Upon information and belief, ACH has a history of failing to provide adequate medical care to inmates and pretrial detainees. These prior incidents constitute a custom which caused the deliberate indifference constitution violations of Defendants Capparelli and the unknown nurse. But for this unconstitutional custom, Defendants Capparelli and unknown nurse would not have violated Plaintiff Blevins' constitutional rights but would rather have afforded her adequate medical care for her serious medical needs.

78.  Indeed, Defendant ACH had just been sued prior to the events complained of herein in the United States District Court for the Eastern District of

Tennessee in a case of nearly identical facts of failing to afford the Plaintiff in that case adequate medical care for a serious medical need by refusing to provide her similar anti-seizure medications, resulting in her experiencing numerous seizures and by failing to send her to the hospital once she began experiencing seizures. See Brawner v. Scott County, Tennessee et al., No. 3:17-cv-001008 (E.D. Tenn. filed March 24, 2017) (Doc. ## 1, 8) (Compl.; Am. Compl.).

79. Defendant ACH was also recently sued on allegations of failure to provide adequate medical care to an inmate/detainee who was brought to the Scott County Jail for failure to pay child support. The allegations in that case—all occurring prior to the events giving rise to this case—are that the Plaintiff's decedent had a gash on his foot when brought into the Jail, that the Jail and ACH failed to afford the Plaintiff's decedent adequate medical care, and that as a result, he developed an infection and died. See Sexton-Pemberton v. Scott County, Tenn. et al., No. 3:17-cv-00310 (E.D. Tenn. filed July 20, 2017). (Doc. # 1) (Compl.).

80. Upon information and belief, ACH was also made aware of or was on notice of the violations found by state regulators regarding improper medical care being provided to inmates and pre-trial detainees. These prior medical care violations, when combined with the Brawner and Sexton-Pemberton actions, clearly establish a pattern of conduct to give rise to a custom of unconstitutional conduct by this defendant. As such, it is liable to Plaintiff for the deliberate indifference of the individual defendants caused by its unconstitutional custom.

81.     Upon information and belief, ACH through its policies and procedures, has failed to adequately train and supervise its employees, officers and agents (medical personnel or otherwise) to provide detainees and inmates adequate medical care for serious medical needs.   For example, and upon information and belief, but for ACH's improper policies and procedures, it is hard to fathom how (1) Keesha Blevins was never provided her anti-seizure medications, gabapentin and carbamazepine, which ACH, through its employees Capparelli and the unknown nurse, knew she was taking based on a prior grand mal seizure, (2) Capparelli and the unknown nurse failed to provide Blevins any medical care whatsoever while she experienced numerous seizures, instead deciding, through the directives of Defendant Capparelli to attempt to obtain the medication from Blevins' family and in not ordering her sent to the hospital or otherwise afforded any medical care whatsoever for her medical emergent event and (3) Defendant Capparelli and the unknown nurse failed to inform the hospital on May 6, 2017 of Blevins' medication list and their failure to provide any of those medications to her.  ACH's policies and procedures as noted herein caused the deliberate indifference constitutional violations of Defendants Capparelli and the unknown nurse. But for these unconstitutional policies and procedures, Defendants Capparelli and the unknown nurse would not have exhibited deliberate indifference to Blevins' serious need for adequate medical care.

82.     ACH's policies and procedures as noted herein caused the deliberate indifference constitutional violations of Defendants Capparelli and the unknown

nurse. But for these unconstitutional policies and procedures, Capparelli and the unknown nurse would not have exhibited deliberate indifference to Keesha Blevins' serious need for adequate medical care but would have instead (1) provided her the medications she was taking, including the gabapentin and clonazepam, (2) provided her adequate medical care as soon as she began experiencing seizures and (3) told the hospital of the complete medications list that Keesha Blevins presented with on intake on April 30, 2017 and the fact that the Jail had willfully refused to provide her any of those medications.

83.     All of Plaintiff Keesha Blevins' injuries and damages were proximately caused by Defendant ACH's unconstitutional customs, policies and procedures.

84.     Plaintiff therefore sues ACH and seeks the following relief:

   a.   For medical expenses (past, present and future);

   b.   lost wages;

   c.   loss of earning capacity;

   d.   pain and suffering, mental and emotional anguish, loss of enjoyment of
        life, permanent injury and disability;

   e.   For any and all other damages allowable under state or federal law;

   f.   Attorney's fees pursuant to 42 U.S.C. § 1988;

   g.   Costs of this action;

   h.   Discretionary costs.

24

**C.** **Tenn. Code Ann. § 29-20-202 et. seq. (TGTLA – Negligence)**

85.  Plaintiffs hereby incorporate the preceding paragraphs of this complaint as if fully set forth herein.

86.  Scott County was at all times hereto responsible for the operation and the supervision of the Scott County Jail and its employees and third party medical providers.

87.  Pursuant to the Tennessee Governmental Tort Liability Act, Scott County, and individual defendants and the John and Jane Doe Defendants owed Keesha Blevins a duty to provide her adequate medical care while she was detained.

88.  These Defendants breached these duties of care as set forth herein and are therefore liable to the Plaintiffs pursuant to the TGTLA.

89.  These Defendants are negligent per se for violating Tennessee Code Annotated § 41-2-109(5).

90.  These Defendants are also negligent per se for not complying with various provisions of state-established minimum standards for jail facilities.

91.  These Defendants' breaches of the duties noted herein proximately caused Plaintiff's injuries and damages.

92.  Plaintiff sues these Defendants under the TGTLA for these reasons and all the reasons previously set forth herein and seek money damages for all categories previously set forth herein, supra, in the maximum amount allowed under said law.

25

## VI.  PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff respectfully requests this Honorable Court grant relief as follows:

a.  Issue process, requiring the Defendants to answer this Complaint.

b.  Empanel a jury to try this cause.

a.  Award compensatory damages against all Defendants pursuant to the claims brought pursuant to 42 U.S.C. § 1983 in the amount of $2,250,000.00.

b.  Award compensatory damages against all Defendants in the maximum amount allowed under the Tennessee Governmental Tort Liability Act.

c.  Award Plaintiffs attorney's fees pursuant to 42 U.S.C. § 1988.

d.  Award costs of this action including discretionary costs.

e.  Award any other or further relief to which she may be entitled.

Respectfully submitted this 10th day of **August, 2017**.

**Butler, Vines and Babb, PLLC**

*/s/ Darren V. Berg, Esq.*
**Darren V. Berg (BPR 23505)**
**Weldon E. Patterson (BPR 13608)**
2701 Kingston Pike
Knoxville, TN 37901-2649
865/637-3531 (phone)
865/637-3385 (fax)
dberg@bvblaw.com
*Attorney for Plaintiffs*